UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEMUJIN KENSU,

      Plaintiff,

v.                                        Case No. 13-10279
                                        Hon. Victoria A. Roberts

JOSHUA B. BUSKIRK, et al.,

      Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (Doc. #80)**

## I.    INTRODUCTION

Temujin Kensu ("Kensu") is a prisoner in the custody of the Michigan Department

of Corrections ("MDOC").  Only one claim is before the Court: deliberate indifference to

serious medical needs in violation of 42 U.S.C. §1983.  Kensu says that for more than

twenty years, he has experienced a lack of appropriate care for joint and spinal injuries.

Kensu has another suit pending. The *Rapelje* case alleges: (1) an Eighth

Amendment violation for deliberate indifference with respect to his wheat and dairy

intolerance; and (2) retaliation under the First Amendment. The two lawsuits involve

some of the same defendants.  In an earlier order, the Court declined to consolidate the

two cases because they do not involve a common question of law or fact, and because

of the risk of prejudice to Defendants.  *Dkt. No.* 144.

The matter is before the Court on a Motion for Summary Judgment filed by

defendants' Howard Tyree, P.A., Jeffrey Bomber, D.O., Ramesh Kilaru M.D., and

1

Joshua Buskirk, P.A.

The Court **GRANTS** their Motion.

## II.   BACKGROUND

This lawsuit involves events which occurred while Kensu was confined at Saginaw Correctional Facility and the Thumb Correctional Facility.  Kensu currently resides at the Oaks Correctional Facility.  Kensu says he was denied medical care for spinal and joint injuries, disease, inflammation, and degeneration.  Kensu says Defendants' inaction caused additional injury leading to permanent damage.

Defendant Howard Tyree, P.A., ("Tyree") worked for Correctional Medical Services, Inc., ("CMS") for approximately five years before the CMS contract with the Michigan Department of Corrections ("MDOC") ended.  *Affidavit of Howard Tyree*, at 2.  In his capacity as a doctor, he treated Kensu between September 2005 and August 2008.  *Id*.  Kensu asked for a surgery referral during an appointment on October 12, 2005; Tyree assessed his activities of daily living ("ADL") and advised Kensu that surgery was not medically necessary.  *Id*. Tyree informed Kensu that he could pay for speciality care himself.  *Id*. On January 18, 2007, Tyree had a discussion with Kensu.  *Id*. at 3.  Afterwards, Tyree typed ten pages of notes with twenty-two different points addressing Kensu's complaints about his back, knees, ankles, and shoulders, among others.  *Id*.

Tyree examined Kensu's shoulder again on May 4, 2007 because Kensu said it was getting worse.  *Id*.  Although Kensu reported discomfort, Tyree concluded he still could engage in ADLs.  *Id*.  Tyree discussed whether an MRI should be done, but it was

2

not approved because Kensu was physically active.  *Id.*  On January 4, 2008, Kensu wanted to revisit previously addressed medical issues for his joint and back problems, but since he did not report new symptoms, Tyree informed him that those issues had already been addressed.  *Id.* at 3-4.  Tyree says his last involvement with Kensu was on August 18, 2008, when he approved a nurse's request to provide Kensu with a breathing treatment.  *Id.* at 4.

Joshua Buskirk, P.A., ("Buskirk") has been a medical provider at Saginaw Correctional Facility since 2009.  *Affidavit of Joshua Buskirk*, at 2.  Buskirk discontinued Kensu's order for supplemental Vitamin D because Kensu refused to take a lab test to determine his Vitamin D level.  *Id.* at 5.  Buskirk saw Kensu regarding back and joint problems three times; during each visit, Buskirk noted that these were chronic complaints, there were no new symptoms and the issues had been addressed in a way that Buskirk determined was appropriate.  *Id.* at 6.

Jeffrey Bomber, D.O., ("Bomber") was a Regional Medical Director for the region that includes the Saginaw Correctional Facility.  *Affidavit of Jeffrey Bomber*, at 2.  Bomber saw Kensu on April 5, 2011 along with Buskirk.  *Id.*  According to Buskirk, Kensu "refused to cooperate" with lab testing and did not show up for scheduled appointments.  *Affidavit of Joshua Buskirk,* at 3.  Kensu's shoulder and back pain were also discussed.  *Affidavit of Jeffrey Bomber*, at 2.  Bomber recommended a fourteen day prednisone treatment to address complaints of nasal congestion and "inflammatory conditions."  *Id.*  Bomber says this visit was the only time he heard that Kensu had joint and back issues; Bomber had no other involvement with these claims by Kensu.  *Id.* at 3.

Ramesh Kilaru M.D. ("Kilaru") has been a medical provider at Thumb Correctional Facility since 2009. *Affidavit of Ramesh Kilaru*, at 2. He first treated Kensu on March 28, 2012 and he saw him multiple times; his medical treatment of him ceased in June 2014 when Kensu transferred to another location. *Id.* at 2 and 5. On May 8, 2012, Kilaru saw Kensu for "mild" popping of the knees. Kensu requested medications which Kilaru advised were not medically necessary. *Id.* at 2. Kensu requested ankle and knee braces as well as x-rays; Kilaru ordered x-rays but concluded braces were not medically necessary after consulting with Dr. Rodgers at Corizon. *Id.* at 3.

On November 13, 2012, Kensu was treated for a new right-knee acute sports injury. *Id.* Kensu had crutches and an ACE wrap; Kilaru ordered rest, ice, compression and elevation. *Id.* Kilaru said it was likely a hamstring injury but it could also be a meniscal tear. *Id.* During a follow-up appointment two weeks later, Kensu said his knee was not improving. *Id.* Kilaru requested an orthopedic consultation; it was not approved. *Id.* Ricky Coleman, D.O., concluded the injury could be managed conservatively since there was no locking of the joint; Kilaru concurred in that assessment. *Id.* Kilaru saw Kensu and requested a knee brace for him on December 27, 2012. *Id.* at 3-4. Kilaru evaluated Kensu's knee on five other occasions; he decided that an MRI was not necessary, that Kensu should perform extensor and stretching exercises, and see a physical therapist to develop a home exercise program. *Id.* at 4-5.

## III.   SUMMARY JUDGMENT

Summary judgment must be granted "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986).  A fact is material if it could affect the outcome of the case based on governing substantive law.  *Id.* at 248.  A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party.  *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the nonmoving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  Summary judgment is appropriate if the party with the burden of proof at trial fails to establish the existence of an element that is essential to that party's case.  *Muncie Power Products, Inc. v. United Technologies Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.  Conclusory allegations are insufficient to create a genuine issue of material fact.  *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party.  *Kochins v. Linden Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).  "The Court need consider only the cited materials, but it may consider other materials in the record."  Fed.R.Civ.P. 56(c)(3).  The Court's function at this stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249.

5

IV.    **DISCUSSION**

    A.    **Statute of Limitations**

Defendants' say all claims against Tyree are barred by the statute of limitations. The Court agrees.

Claims brought under 42 U.S.C. §1983 have a three year statute of limitations. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012).  For claims subject to the Prison Litigation Reform Act of 1995, the statute of limitations is tolled while the plaintiff exhausts his required administrative remedies.  42 U.S.C.A. § 1997e(a).

Kensu filed his original complaint on January 22, 2013.  Tyree last treated Kensu in August, 2008.  Defendants' say Plaintiffs' claims can only reach beyond the three year statute of limitations to the extent it was tolled while Kensu exhausted his administrative remedies.

Kensu says Tyree was involved in denying him medical care even when he was not personally seeing Kensu.  Kensu filed a grievance against Tyree on June 8, 2009 and August 21, 2009.

According to Defendants, the last day Tyree provided treatment was August 18, 2008 and Tyree's last day of work was March 31, 2009.

Kensu fails to establish genuine issues of fact with respect to his claim against Tyree.  Even assuming Tyree was involved in Kensu's medical care after August 18, 2008, Tyree could not have been involved after March 31, 2009.  Additionally, even if there were decisions that Tyree was involved in, claims against him would still be barred.  Unless an extension is approved, the grievance process is completed within 120 days.  MDOC Policy Directive, 03.02.130.  If an extension is approved, an

6

additional 15 days is possible.  *Id.*  Thus, Kensu can only seek relief for events that

occurred on or after August 25, 2009.  There is none involving Tyree.

      Tyree is **DISMISSED**.

      **B.**      **42 U.S.C. §1983**

      To prevail on a 42 U.S.C. §1983 claim, Kensu must demonstrate there is a

genuine issue of material fact on two elements: (1) he was deprived of a right secured

by the Constitution or laws of the United States; and (2) the deprivation was caused by

someone acting under color of state law.  *Miller v. Calhoun County*, 408 F.3d 803, 812

(6th Cir. 2005).

      Kensu asserts an Eighth Amendment violation; he says Defendants were

deliberately indifferent and did not appropriately treat his joint and spinal injuries.  Kensu

says this has gone on for over twenty years.

      There is no dispute that Defendants acted under color of state law during the

relevant time period.  The question is whether they deprived Kensu of a right secured by

federal law.  Kensu's allegations against Defendants fail to allege a constitutional

violation; he cannot show Defendants' actions amounted to cruel and unusual

punishment.

      "The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly

inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's

serious medical needs.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.

2004).  The "deliberate indifference" standard applies to a prisoner's challenge to

medical treatment.  *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).  The Eighth Amendment

7

imposes a duty on prison officials to ensure inmates receive "adequate food, clothing, shelter, and medical care" as well as reasonable measures to guarantee safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

### 1.   Objective Component

A deliberate indifference claim under the Eighth Amendment has both objective and subjective components. *Farmer v. Brennan*, 511 U.S. at 834. The objective component requires the existence of a sufficiently serious medical need, such as being incarcerated under conditions that pose a substantial risk of serious harm. *Id.* "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation omitted).

In his response, Kensu says he had serious medical needs and references his First Amended Complaint ("FAC"). Kensu claims he had a shoulder injury which needed medical attention in 2005 but Tyree "falsely noted" the injury did not affect his activities of daily life and decided a surgery referral was not medically necessary. FAC ¶ 98. Kensu also says that after experiencing extreme pain in 2009, he was prevented from getting shoulder surgery; Kensu says he was told MDOC Chief Medical Officer Dr. Jeffrey Stieve cancelled his care. FAC ¶¶ 101-04.

Kensu says Panjak Malik ("Malik") informed him that "MDOC Chief Medical Officer Dr. Jeffrey Stieve has ordered cancellations of your care" and that Stieve "threatened her not to order anything for [Kensu] and not to put anything in writing; to just 'call on the phone.'" FAC ¶104. Malik also showed Kensu the cancellation order

8

and told him "Dr. Stieve is still directing your care.  I don't know why; it is obvious you need shoulder surgery and it was all approved. He cancelled it. I think maybe he [does] not like you for some reason."  FAC ¶106.

 Defendants dispute whether Kensu's shoulder is a serious injury.  In their reply brief, they say Kensu refused surgery for it in 2004 and that he was able to engage in all of his ADLs.  Defendants admit that Kensu's November 2012 right knee injury was an acute injury requiring treatment.

Kensu meets the required objective component of an Eighth Amendment claim for deliberate indifference.

### 2.     Subjective Component

Kensu fails to satisfy the subjective component of his claim.

The subjective component requires a showing that the defendant had "a sufficiently culpable state of mind. . ." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).  Deliberate indifference requires more than "mere negligence" but can be satisfied "...by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer v. Brennan*, 511 U.S. at 835.  A prison official cannot be liable for denying an inmate humane conditions of confinement "...unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837

Defendants' say several medical providers evaluated and treated Kensu for his "chronic complaints" over the years and reached similar conclusions.  Defendants

9

maintain that Kensu received appropriate care and follow up for his right knee injury. Defendants reference Kensu's medical records and affidavits as support for their argument that they responded to Kensu's medical needs in an appropriate manner.

Kensu mentions several instances where he was denied care. He says Dr. Bomber examined him and found he needed care for his back but this care was not provided.  FAC ¶ 134a.  Kensu says he was denied follow up care after receiving medication that worked well for an "inflammatory process" and ear condition. FAC ¶ 134a, n.14.  He filed a grievance after Defendant Kilaru refused to listen to his medical concerns or review medical documentation; Kilaru said "I have been told all about you" and refused to properly provide care. FAC ¶ 176.

None of the examples provided by Kensu shows Defendants' disregarded an excessive risk to his health or safety.  He was seen regularly by medical staff.  Although he disagrees with some of the treatment he received and decisions that were made regarding his health, none of his allegations rise to the level of "deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Based on the record before the Court, a juror could not reasonably find that Buskirk knew of and disregarded an excessive risk to Kensu's health or safety.  Buskirk saw Kensu regularly and determined that there was no new symptoms.  He concurred with previous doctors. Similarly, Bomber had very limited contact with Kensu; he discussed Kensu's back and shoulder pain with Buskirk and prescribed what they felt were appropriate medications.

Kilaru had extensive interaction with Kensu, and the record reflects that various medical treatments were considered and that multiple doctors were involved in

10

determining the right course of treatment.  There is nothing in the record to reflect that

any of the doctors knew of an excessive risk to Kensu's health and disregarded it.

A difference of opinion regarding treatment or need for surgery is insufficient to

state a claim under the Eighth Amendment.  *Chapman v. Parke*, 1991 WL 203080, at *2

(6th Cir. Oct. 4, 1991).

Defendants are entitled to summary judgment on Count I.

### C.   Injunctive Relief

In his First Amended Complaint, Kensu requested injunctive relief to secure

access to medical care and declaratory judgment saying his Eighth Amendment rights

were violated.  Defendants say these claims are moot because Kensu transferred to a

different facility.

A prisoner's claim for declaratory and injunctive relief against certain prison

officials becomes moot when the prisoner is transferred from the prison of which he

complained to a different facility.  *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir.

2003).  To the extent that Henderson asks for injunctive relief against officials at

Saginaw Correctional Facility and Thumb Correctional Facility, his claim is moot.

Even if Kensu's request for an injunction is not moot, it would still be

unwarranted.  Kensu does not seek injunctive relief through a motion for a temporary

restraining order or a preliminary injunction.  Kensu's request is for a remedy to be

determined after liability has been established.

When reviewing a request for injunctive relief, the court balances: (1) whether the

person requesting relief has shown a substantial likelihood or probability of success on

the merits; (2) whether irreparable injury would be suffered without the injunction; (3) if

11

the preliminary injunction will cause substantial harm to others; and (4) whether the

public interest would be served by issuance of the injunction.  *Tumblebus Inc. v.*

*Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).  The plaintiff bears the burden to persuade

the court that the factors weigh in favor of granting a preliminary injunction. *Granny*

*Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of*

*Alameda County*, 415 U.S. 432, 441 (1974).

   Neither party addresses these four factors.  Kensu's request for injunctive relief is

**DENIED**.

## V.  CONCLUSION

   Defendants' Motion for Summary Judgment is **GRANTED**.   Defendants' Howard

Tyree, P.A., Jeffrey Bomber, D.O., Ramesh Kilaru M.D., and Joshua Buskirk, P.A. are

**DISMISSED**.

   **IT IS ORDERED**.

<div style="margin-left:40%;">
S/Victoria A. Roberts     
Victoria A. Roberts
United States District Judge
</div>

Dated:  September 2, 2015

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 2, 2015.
>
> S/Carol A. Pinegar
> Deputy Clerk