UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

TEMUJIN KENSU,

       Plaintiff,                     Case No. 13-10279
                                            Honorable Victoria A. Roberts

v.

JOSHUA BUSKIRK, et al.,

       Defendants.
_____/

**ORDER REGARDING PLAINTIFF'S POST-JUDGMENT MOTIONS**

## I.    INTRODUCTION

On March 28, 2016, a jury returned a verdict in favor of Plaintiff Temujin Kensu ("Kensu") in the amount of $325,002, finding that five defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Court entered a judgment closing the case on March 30, after which Kensu filed four motions: (1) motion for attorney fees; (2) motion for equitable relief; (3) motion to compel the production of records; and (4) motion for an indicative ruling. These motions are fully briefed. For the following reasons, the Court **GRANTS IN PART** Kensu's motion for attorney fees, as explained below, and **DENIES** his other motions.

## II.    BACKGROUND

Kensu began this prisoner civil rights action on January 22, 2013, alleging an Eighth Amendment deliberate indifference claim, a First Amendment retaliation claim, and a claim for intentional infliction of emotional distress; he filed an amended complaint the following month alleging only the deliberate indifference claim. Oliver Law Group, P.C. ("Oliver Law") represented Kensu from the outset of the litigation until October

2013, when the Court granted its request to withdraw as counsel.  Kensu proceeded *pro se* until retaining Solomon Radner ("Radner") in April 2015.

The suit proceeded to a jury trial in March 2016 against 8 defendants: Jeffrey Stieve, Susan McCauley, Mary Zamora, Charles Turner, William Borgerding, Lloyd Rapelje, Russell Vittitow, and Jeannie Stephenson.  On March 28, 2016, a jury returned a verdict in favor of Kensu, finding that Stieve, McCauley, Zamora, Borgerding, and Rapelje ("Defendants") were deliberately indifferent to his serious medical needs.  The jury found Stieve, McCauley, and Borgerding liable for compensatory damages of $25,000, $5,000, and $10,000, respectively, and assessed punitive damages against them, respectively, in the amounts of $150,000, $70,000, and $65,000.  The jury rendered an award of $1.00 in nominal damages against each Zamora and Rapelje. The following day, the Court entered a judgment in accordance with the verdict, closing the case.

On April 11, 2016, Kensu filed a motion for attorney fees.  Oliver Law responded, seeking to recover for work performed prior to withdrawing as Kensu's counsel by either enforcing a lien pursuant to the terms of a contingent fee agreement or by payment of attorney fees on a per-hour basis.  Defendants filed a late response to Kensu's motion, but they did not address Oliver Law's fee request.  Kensu filed a reply.

Kensu also filed a motion for equitable relief, in which he seeks an order: declaring that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights; preventing the Michigan Department of Corrections ("MDOC") from transferring him to a different facility without Court approval; and requiring Defendants to provide him with several different medical treatments,

2

examinations, and accommodations.  While the motion was pending, Defendants filed a

Notice of Appeal to the Sixth Circuit.  Subsequently, they filed an objection to Kensu's

motion for equitable relief, stating that their notice of appeal divested the Court of its

jurisdiction to decide the motion.

Agreeing that the Court could no longer grant him the equitable relief he sought

due to Defendants' appeal, Kensu filed a motion for the Court to enter an indicative

ruling stating that if the case were remanded, it would decide his motion for equitable

relief.

In his other motion before the Court, Kensu seeks an order compelling

Defendants and/or MDOC to produce phone call records and recordings.

### III.   MOTION FOR ATTORNEY FEES

#### A.   Legal Standard

District courts have discretion to award attorney fees to a "prevailing party" in a

civil rights suit.  42 U.S.C. § 1988(b).  However, the Prisoner Litigation Reform Act

("PLRA") limits the award of attorney fees in prisoner civil rights suits.  42 U.S.C. §

1997e(d)(1).  The PLRA allows an award of attorney's fees in a 42 U.S.C. § 1983 claim

brought by a prisoner only to the extent that the fee "was directly and reasonably

incurred in proving an actual violation of the plaintiff's rights . . . and the amount of the

fee is proportionately related to the court ordered relief for the violation. . . ."  §

1997e(d)(1)(A).  In determining an attorney fees dispute under the PLRA, the Court

follows a four-step approach: (1) determine whether plaintiff prevailed for the purposes

of § 1988; (2) calculate the amount of attorney fees due under the "lodestar" method; (3)

determine whether the amount of the fee is proportionate to the court ordered relief for

the violation; and (4) apply a portion of the judgment, not to exceed 25%, to attorney fees. *Siggers-El v. Barlow*, 433 F. Supp. 2d 811, 820 (E.D. Mich. 2006).

Defendants concede that Kensu is a "prevailing party" under § 1988. Thus, the Court must determine the reasonable attorney fees under the lodestar method, and ensure that they comply with the PLRA.

### B.    Oliver Law is Entitled to Attorney Fees

Before determining the merits of Kensu's motion for attorney fees, the Court must address a procedural matter regarding Oliver Law's fee application. Oliver Law seeks to recover for time spent representing Kensu by either enforcing a lien pursuant to a retainer agreement, or by receiving an award of fees on an hourly basis. Although Kensu primarily addresses the validity of the lien in his motion for attorney fees, he does acknowledge that Oliver Law may be entitled to either a *quantum meruit* fee or a recovery of fees on an hourly basis, by application. Since Kensu and Oliver Law agree the *quantum meruit* approach may resolve this dispute, the Court analyzes the issue on this basis.

Oliver Law may recover attorney fees under both Michigan law and the PLRA. Prior to withdrawing, counsel combed through extensive records, filed a comprehensive complaint and an amended complaint, and successfully defended against a motion to dismiss. Thus, the fees which Oliver Law seeks to recover fall within the scope of the PLRA, as they were "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." § 1997e(d)(1)(A).

Under Michigan law, an attorney on a contingent fee arrangement is entitled to a *quantum meruit* recovery of attorney fees if she rightfully withdraws from a matter, is

4

wrongfully terminated by a client, or is terminated by a client for cause but has not

engaged in disciplinable misconduct prejudicial to the client's case or contrary to public

policy. *Idalski v. Crouse Cartage Co.*, 229 F. Supp. 2d 730, 741 (E.D. Mich. 2002)

(citing *Polen v. Melonakos*, 222 Mich. App. 20, 24, 27 (1997)).  A *quantum meruit* award

is "generally determined by simply multiplying the number of hours worked by a

reasonable hourly fee," but Courts must also look to the contractual terms.  *Island Lake*

*Arbors Condo. Ass'n v. Meisner & Associates*, *PC*, 301 Mich. App. 384, 401 (2013)

(citation omitted).  Because Oliver Law withdrew at such an early stage in this litigation,

enforcing the contingency fee agreement would result in an excessive fee award.

Quantum meruit means "as much as deserved."  *Id.* at 402 (citation and quotation

marks omitted).  Here, an award of fees based on the lodestar approach under the

PLRA is appropriate and will compensate Oliver Law the amount it deserves.

### C.    Lodestar Calculation

The "starting point for determining the amount of a reasonable attorney fee is the

'lodestar' amount which is calculated by multiplying the number of hours reasonably

expended on the litigation by a reasonable hourly rate."  *Imwalle v. Reliance Med.*

*Prods., Inc.,* 515 F.3d 531, 551 (6th Cir. 2008).  The party seeking to recover fees bears

the initial burden to substantiate the hours worked and the rate claimed.  *Hensley v.*

*Eckerhart,* 461 U.S. 424, 433 (1983).

Here, Radner seeks total attorney fees in the amount of $48,355.62, as follows:

(i) 156.75 hours at $217.50 per hour for himself; (ii) 4 hours at $217.50 per hour for

attorney Ari Kresch; and (iii) 121.25 hours at $110.00 per hour for three non-attorneys.

Oliver Law submits 50.32 attorney hours and 98.59 non-attorney hours at the same hourly rates as Radner, for a total of $21,796.03.

Radner also submits $2,213.44 in litigation costs, to which Defendants do not object.  Thus, Kensu may recover $2,213.44 in costs.

### 1.  Hours Reasonably Expended

The jury found that Defendants were deliberately indifferent to Kensu's serious medical needs, in violation of his Eighth Amendment rights.  Thus, the Court may only award fees that were "directly and reasonably incurred in proving [that] violation of his rights. . . ."  § 1997e(d)(1)(A).

One primary issue of dispute is whether Kensu may recover fees for work performed by non-attorney staff members.  Fees for non-attorneys who perform work traditionally performed by attorneys are recoverable.  *See Richards v. Johnson & Johnson*, No. 2:08-CV-279, 2010 WL 3219138, at *7 (E.D. Tenn. May 12, 2010) (citation omitted).  *See also ABA Definition of Legal Assistant/Paralegal, A.B.A.,* http://www.americanbar.org/groups/paralegals/resources/current_aba_definition_of_leg al_assistant_paralegal.html  (last updated Aug. 14, 2008) ("A legal assistant or paralegal is a person, qualified by education, training or work experience who . . . performs specifically delegated substantive legal work for which a lawyer is responsible.").

However, "[i]t is well-settled that purely clerical tasks, even performed by a paralegal, cannot be included in an award of attorney's fees."  *Salamango v. NCSPlus Inc.*, No. 2:14-CV-10189, 2014 WL 3900583, at *6 (E.D. Mich. Aug. 11, 2014) (citation omitted); *Richards,* 2010 WL 3219138, at *7 n. 4 (disallowing fees for clerical tasks performed by paralegals such as document review, locating registered agents,

6

preparing summonses, electronic court filings, keeping track of deadlines, and mailing documents).  To distinguish between fees that are recoverable and ones that are purely clerical, the Court should assess whether the task involves legal skills.  *See Allison v. City of Lansing,* 2007 WL 2114726, at *1 (W.D. Mich. July 19, 2007) (distinguishing "proofing, printing, and mailing" from "professional" tasks that required legal skills, such as "editing and revising [an] appellate brief and cross-referencing to the appendix").

### a.   Radner's Hours

The Court reviewed Radner's timesheets and finds that all of the attorney hours billed were directly and reasonably incurred to prove Kensu's deliberate indifference claim.  The Court finds that Radner and Kresch may recover fees for 160.75 attorney hours, and notes that Defendants do not object to any specific billings submitted by Radner or Kresch.

On the other hand, the timesheet Radner submits for his non-attorney staff contains tasks that are not recoverable.  In particular, Kensu cannot recover for the four entries from March 14 to March 18, 2016, in which non-attorney staff members billed a total of 28 hours for copying exhibits and preparing exhibit books.  These tasks are strictly clerical in nature.  *See Allison*, 2007 WL 2114726, at *1.  Similarly, Kensu may not recover for 0.75 hours billed on 4/16/15 for drafting and filing a notice of appearance; 0.25 hours billed on 4/22/15 for "communicating with Kensu's prior counsel"; 0.25 hours billed on 7/9/15 for drafting and sending request for medical records, or 4.25 hours billed for editing final pretrial order to include exhibit numbers and filing it on 2/10/16 and 2/16/15.  In addition, the Court finds that Kensu may only recover four of the eight non-attorney hours billed on 6/30/15 for reviewing and organizing

7

medical records in chronological order, and only 2.75 of the 5.5 hours billed on 7/20/15 for reviewing and organizing medical records.  With the exception of the June 30 and July 20, 2015 entries, which the Court finds contain both clerical and non-clerical work, each of the above-referenced tasks is purely clerical, and therefore not recoverable. *See id.*  The Court reduces Radner's non-attorney request by 40.25 hours; with this reduction, Kensu can recover for 81 non-attorney hours.

### b.  Oliver Law's Hours

A review of Oliver Law's timesheet shows that several billing entries relate to claims filed in the initial complaint but abandoned in the amended complaint, and other entries relate entirely to a different case Kensu brought in this Court, in which Oliver Law also represented him.  *See Kensu v. Rapelje*, Case No. 12-11877.  A non-exhaustive list of these entries include: research for First Amendment retaliation claims on 2/23 and 2/24/12; a phone call regarding retaliation claims on 2/28/12; drafting a letter to the warden regarding mail being opened on 3/13/12; call with client regarding musical equipment being taken on 4/9/12; meet with client regarding shoulder and diet cases on 4/12/12; review write-up regarding "mp3 player scam" on 5/3/12; call with client regarding smoke exposure suit on 6/18/12; several entries regarding striking a complaint in an earlier filed suit in August 2012; and several entries regarding amending the complaint for claim-splitting purposes.  The hours Oliver Law submitted for billings not related to Kensu's deliberate indifference claim are not recoverable under the PLRA. *See* § 1997e(d)(1) (fees only awarded if they were "directly and reasonably incurred in proving an actual violation of the plaintiff's rights . . . .").

Moreover, Oliver Law admits that, despite attempts to include only billing entries related to this case, some of their entries reflect billings that apply to Kensu generally. Examples of these entries include: "meeting with [Kensu's] wife" on 10/12/11; "meeting with client" on 11/28/11 for 8.33 hours and 12/16/11 for 7.75 hours; "client call" on 1/6/12; "call with client re several issues" on 6/7/12; numerous phone calls with the prison to set up visits; "review documents" on 9/13/11, and many other entries for general document review; and several entries regarding compiling and delivering Kensu's records to him after withdrawing as counsel.  Although vague descriptions like these may normally not be an issue, where, as here, counsel represented Kensu in more than one case, the vague descriptions prevent the Court from determining if the fees were incurred directly and reasonably in furtherance of *this case*.

Notwithstanding these deficiencies, it is clear that many of the hours Oliver Law billed were incurred in litigating Kensu's deliberate indifference claim.  As discussed above, counsel drafted comprehensive pleadings and defended a motion to dismiss. However, in light of the above-described deficiencies in the Oliver Law's timesheet, some reduction in the amount of fees sought is warranted.  "The common practice in this circuit, and in others, when the court is confronted with a request for the award of attorney's fees in the face of inadequate billing records, is across-the-board fee reductions."  *Helfman v. GE Grp. Life Assur. Co.*, No. 06-13528, 2011 WL 1464678, at *8 (E.D. Mich. Apr. 18, 2011) (reducing the total fee requested by 20% due to block billing and vague entries) (citation and internal quotation marks omitted).  The Court reduces Oliver Law's total fee request by 20% based on its vague billing descriptions and entries that concern claims other than Kensu's deliberate indifference claim.

9

In addition, Oliver Law's timesheet contains numerous entries for the following types of tasks: drafting and/or reading emails; organizing, mailing, scanning, printing, and/or saving documents; and logging into electronic docket and filing documents. These are all purely clerical in nature. *See Allison*, 2007 WL 2114726, at *1. Rather than go line-by-line to deduct each specific clerical billing, the Court reduces Oliver Law's total fee request by an additional 10%. *See Helfman*, 2011 WL 1464678, at *8.

### 2. Reasonable Hourly Rate

The parties agree that $217.50 is a reasonable hourly rate for attorneys. However, this rate violates § 1997e(d)(3), which provides that no fee awarded may be "based on an hourly rate greater than 150 percent of the hourly rate established under [18 U.S.C. § 3006A] for payment of court-appointed counsel." Section 3006A is the Criminal Justice Act ("CJA"); it establishes the maximum allowable fees for court-appointed counsel representing indigent defendants in federal criminal cases. *Hadix v. Johnson*, 398 F.3d 863, 865 (6th Cir. 2005). In the Sixth Circuit, "the maximum allowable attorney fees under the PLRA [is] based on the amount authorized by the Judicial Conference." *Id.* at 868. The current CJA rate is $129.00 per hour. *See* Judicial Conference, *Guide to Judiciary Policy*, Vol. 7, Part A, § 230.16; *see also White v. Bell*, No. 3:10-00863, 2015 WL 5123906, at *2 (M.D. Tenn. Aug. 31, 2015) (using 2015 CJA rate of $127.00 per hour). Thus, the maximum hourly rate under the PLRA is $193.50 per hour (i.e., 150% of $129.00). This is a reasonable hourly rate in this suit.

Radner and Oliver Law both request an hourly rate of $110 for non-attorneys. Kensu sets forth sufficient evidence for the Court to find that this is a reasonable hourly rate for non-attorneys in this district, and Defendants do not challenge the proposed rate

– other than their blanket objection to any recovery for non-attorneys.  The Court uses the rate of $110 per hour to calculate the amount recoverable for work performed by non-attorneys.

### D.    Proportionality of Attorney Fees to Relief Awarded

Defendants say the Court should award Kensu no more than 15% of his requested attorney fees, because the $325,002 award "was not a complete success" based on his counsel's remark during opening statements that the evidence would support a verdict of $5 million.  This argument lacks merit.

Defendants rely on *Cramblit v. Fikse*, 33 F.3d 633 (6th Cir. 1994), which is distinguishable from this case.  In *Cramblit*, the Sixth Circuit found that the district court did not abuse its discretion in declining to award attorney fees where plaintiff was *only* awarded nominal damages.  *Id.* at 635-36.  Here, Kensu was awarded $40,000 in compensatory damages and $285,000 in punitive damages.

These are significant awards, especially when considering that this is a prisoner civil rights case.  *See Farella v. Hockaday*, 304 F. Supp. 2d 1076, 1081 (C.D. Ill. 2004) ("Rare is the prisoner who succeeds in winning a case at all, much less winning more than nominal damages.").  Kensu's award of $325,002 is not nominal; Defendants assertion that the award was not a complete success is baseless.  *See, e.g.*, *Tanner v. Borthwell*, No. 07-14579, 2013 WL 1148411, at *1 (E.D. Mich. Mar. 19, 2013) ("Seven thousand dollars is not a small punitive damage award, particularly in a prisoner civil rights case.").  The award of attorney fees is proportional under the PLRA.

**E.     Percentage of the Judgment Applied to Attorney Fees Award**

Section 1997e(d)(2) requires the Court to apply "a portion of the judgment (not to exceed 25 percent)" to the attorney fees awarded against Defendants.  Defendants say the Court should apply 25% of the judgment to the fees award; Kensu says only 1% of the judgment should apply to the fees award.

Where a jury awards punitive damages, courts have found $1 to be an appropriate amount of the judgment to apply to attorney fees.  *See Siggers-El*, 433 F. Supp. 2d at 815, 822-23 (requiring plaintiff to pay $1 in attorney fees out of the judgment where the jury awarded $200,000 in punitive damages (citing *Morrison v. Davis*, 88 F. Supp. 2d 799, 811 (S.D. Ohio 2000) ("In light of the facts of this case, the constitutional rights implicated, and the jury's clear signal that the Defendants should be punished, the Court finds that a $1 assessment against the judgment is within its discretion under § 1997e(d)(2).")))  Based on "the jury's clear signal that the Defendants should be punished," the Court assesses 1% of the judgment – or $3,250.02 – to attorney fees, as Kensu requests. *See Morrison*, 88 F. Supp. 2d at 811.

**F.     Summary**

Based on the foregoing, Kensu, as the prevailing party, is entitled to recover attorney fees from Defendants in the following amounts:

1. **Radner**:     $31,105.12   for Attorney Hours (160.75 hours * $193.50/hr)
   +   $8,910       for Non-Attorney Hours (81 hours * $110.00/hr)
   =   **$40,015.12   Total**

2. **Oliver Law**: $9,736.92     for Attorney Hours (50.32 hours * $193.50/hr)
   + $10,844.90   for Non-Attorney Hours (98.59 hours * $110.00/hr)
   = $20,581.82
   **Less** 30% across-the board reduction: ($20,581.82 * 0.7)
   = **$14,407.27   Total**

12

3. **Total**: Oliver Law + Radner = **$54,422.39**

4. **Less 1% of the judgment** ($325,002 * 0.01) = **$3,250.02**

5. **Grand Total** ($54,422.39 - $3,250.02) = **$51,172.37**

Accordingly, Kensu's motion for attorney fees is **GRANTED IN PART**.  The Court **AWARDS** Kensu attorney fees in the amount of $54,422.39 – $3,250.02 = $51,172.37. Of that amount, Oliver Law is entitled to $14,407.27.  The Court also awards Kensu costs in the amount of $2,213.44.

Moreover, although Kensu prevailed against five defendants, because the jury awarded only nominal damages against Zamora and Rapelje, they are not liable for attorney fees or costs.  *See Farrar v. Hobby*, 506 U.S. 103, 115 (1992) ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all.") (internal citation omitted); *Cramblit*, 33 F.3d at 635-36 (court did not abuse its discretion in declining to award attorney fees where plaintiff was only awarded nominal damages).

Stieve, McCauley, and Borgerding are liable in an amount proportional to their relative overall liability: i.e., Stieve is liable for 53.85% ($175,000/$325,000) of the attorney fees and costs awarded, and McCauley and Borgerding are each liable for 23.075% ($75,000/$325,000) of the attorney fees and costs awarded.

## IV.  MOTION TO COMPEL THE PRODUCTION OF RECORDS

Kensu moves the Court for an order compelling Defendants and/or MDOC to disclose records of phone calls he made to specific phone numbers, the costs associated with those calls, and the corresponding recordings for those calls.  In

13

response, Defendants produced the phone records and cost information Kensu sought, but they objected to producing the recordings under MDOC policy and Michigan law.

Kensu's counsel states that he needs the recordings so he can determine which calls' costs are recoverable, and so that he can provide the Court with relevant calls to resolve Oliver Law's lien dispute.  Neither reason is persuasive.  Kensu does not need the recordings to determine which calls' costs are recoverable.  His attorneys submitted timesheets based on contemporaneous time records; based on those and the call logs Defendants produced, Kensu could have submitted a supplement to his attorney fees application setting forth the costs he sought to recover related to phone calls, but he failed to do so.  Moreover, since Oliver Law is entitled to attorney fees on an hourly basis – as explained above – there is no longer a lien dispute.  Because Kensu fails to set forth a reason that warrants production of the phone call recordings, there is no need to address the merits of Defendants' objections.

Kensu's motion for an order compelling Defendants and/or MDOC to produce records (Doc. # 146) is **DENIED**.

## V.    MOTIONS FOR EQUITABLE RELIEF AND FOR AN INDICATIVE RULING

On April 11, 2016, Kensu filed a motion for equitable relief, seeking an order: declaring that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights; preventing MDOC from transferring him to a different facility without Court approval; and requiring Defendants to provide him with several different medical treatments, examinations, and accommodations.  On April 26, 2016, Defendants filed a notice of appeal.

14

The notice of appeal divested the Court of jurisdiction to *grant* Kensu's requested relief. However, under Federal Rule of Civil Procedure 62.1(a): "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . (2) deny the motion. . . ." *See also* Fed. R. Civ. P. 62.1, Advisory Committee Notes (2009) ("After an appeal has been docketed and while it remains pending, the district court … can entertain [a] motion and deny it."). Finding that Kensu is not entitled to the relief he requests, the Court proceeds under Rule 62.1(a)(2).

In his motion, Kensu says the Court stated during the final pretrial conference that it would consider any equitable relief by way of motion after the jury trial ended. However, on March 28, 2016, after the trial ended, the Court asked the parties if there was anything else to be considered, and Kensu's counsel stated, "Not from Plaintiff." (Doc. # 158, PgID 2416). The Court docketed the verdict form the following day, and on March 30 it entered a judgment, "resolv[ing] the last pending claim and clos[ing] the case." (Doc. # 141). Courts routinely enter a judgment closing a case after the end of a jury trial. Despite this routine procedural step, Kensu failed to raise the issue of equitable relief when questioned if there were any outstanding matters. Thus, the Court finds that Kensu waived his right to request equitable relief. The result would be the same even if Kensu had moved for equitable relief before the Court closed the case; he fails to show he is entitled to such relief.

A declaration that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights would be duplicative of the Jury Verdict and the Judgment. Thus, there is no need for the relief.

Kensu's request for an order preventing MDOC from transferring him from Macomb Correctional Facility without Court approval fails on multiple grounds. First, this was not a First Amendment retaliatory transfer case, and Kensu fails to provide legal justification for the Court to grant him relief. Moreover, Kensu is no longer at the Macomb Facility, rendering this request moot. *Henderson v. Martin*, 73 Fed. Appx. 115, 117 (6th Cir. 2003) ("a prisoner's claim for declaratory and injunctive relief against certain prison officials became moot once the prisoner was transferred from the prison of which he complained to a different facility"). Similarly, Kensu's transfer renders moot his request for an order directing Defendants to provide certain medical treatments and accommodations. *Id.* And, even if the claim was not moot, the Court would deny relief because it is not qualified to make decisions regarding necessary medical treatment. Moreover, several policy and safety considerations weigh against the Court micro-managing Defendants and/or MDOC under these circumstances.

Based on the foregoing, and because Kensu failed to establish that he is entitled to any requested relief under governing law, the Court **DENIES** Kensu's motion for equitable relief (Doc. # 143) and **DENIES** his motion for indicative ruling (Doc. # 164).

## VI.   CONCLUSION

Kensu's motion for attorney fees is **GRANTED IN PART**, as explained above, and his motions to compel, for equitable relief and for an indicative ruling are **DENIED**.

**IT IS ORDERED**.

> S/Victoria A. Roberts
> Victoria A. Roberts
> United States District Judge

Dated:  November 1, 2016

16

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 1, 2016.

s/Linda Vertriest
Deputy Clerk